415 So.2d 205 (1982)
STATE of Louisiana
v.
Charles F. WALGAMOTTE.
No. 81-K-2706.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied July 2, 1982.
*206 G. Walton Caire, Edgard, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry J. Morel, Jr., Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
Charles F. Walgamotte was fifteen years old when on July 9, 1973 he allegedly participated in committing a first degree murder upon the female co-owner of an auto parts store in Reserve, Louisiana. The state attempts to continue this capital prosecution originally instituted by grand jury indictment on August 17, 1973.[1]
Defendant contends that prosecution at this late date is barred by C.Cr.P. art. 578 which provides essentially that no trial shall be commenced in capital cases after three years from the date of institution of the prosecution.[2] He further contends that there has been no interruption of the three year limitation as required by Article 579(2).[3]
We granted writs upon defendant's application following a trial court ruling on September 14, 1981 denying his motion to quash.
For the reasons which follow, principally because the state inexcusably neglected to commence trial for a period in excess of three years uninterrupted by any cause specified in Article 579 of the Code of Criminal Procedure, we reverse the ruling of the trial court and order defendant released. Assuming that the limitation period on commencing trial was interrupted between the August 17, 1973 indictment and April 30, 1976, the date of this Court's denial of his writ application (No. 57,838), and between March 7, 1980 and the present time, there was nonetheless a period in excess of forty-six months (April 30, 1976 through March 7, 1980) during which the state could and should have commenced trial, a period not interrupted by any of the causes outlined in C.Cr.P. art. 579. As will be seen hereinafter, there was no action taken to bring the defendant to trial between the April 30, 1976, writ denial and the March 7, 1980 filing of defendant's habeas petition in the district court.
This case has had a long and tortuous procedural history which we will attempt here to trace.
The crime with which defendant is charged occurred on July 9, 1973. He was indicted on August 17, 1973, and brought on for arraignment on August 27, 1973, at which time he pleaded not guilty by reason of insanity. A sanity commission was appointed to examine the defendant. At the *207 sanity hearing on January 9, 1974, the court found that Charles Walgamotte was sane at the time the crime was committed and was capable of standing trial.
On May 31, 1974, represented by appointed counsel, Charles Walgamotte and his brother Frank entered a plea bargain with the state. The state assented, and defendant and his brother each entered unqualified guilty pleas to second degree murder, and they were sentenced by the trial judge to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years.
On January 20, 1975, this Court decided a case pertinent to Charles Walgamotte's situation: State ex rel. Moore v. Warden of Louisiana St. Pen. at DeQuincey, 308 So.2d 749 (La.1975) wherein we found that under the then prevalent provision of the Louisiana Constitution and La.R.S. 13:1570, the district court did not have jurisdiction to accept a plea of guilty and impose sentence upon a fifteen year old for second degree murder, a non-capital offense. Moore's plea and sentence was set aside and he was remanded to the district court for further proceedings.[4]Supra at 752.
On March 31, 1975, defendant, through his attorney, filed a petition in the district court requesting that a writ of habeas corpus be issued because he was being unlawfully detained at the Louisiana State Penitentiary at Angola. The petition declared that the defendant had been fifteen years old when charged. Under La.R.S. 13:1570(5) the district court had lost jurisdiction when the guilty plea to second degree murder was entered and therefore the defendant should be released from Angola and placed in the custody of proper juvenile authorities.
On April 14, 1975, in response to that petition the trial judge vacated the guilty plea to second degree murder, and remanded Walgamotte to the parish prison of St. John the Baptist to await trial on the first degree murder charge rather than placing him in the custody of juvenile authorities.
On May 14, 1975, defendant through counsel filed a writ application in this Court (State v. Charles Walgamotte No. 56304 on the docket of this Court). Essentially he contended that because on May 31, 1974, the adult district court was without jurisdiction to take a plea to second degree murder as relates to a fifteen year old juvenile, and because the district judge in the parish of St. John the Baptist was both the adult and juvenile judge, the entry of the guilty plea to second degree murder should have been permitted to stand, and defendant should therefore have been sentenced as a juvenile for the crime of second degree murder. Had he been sentenced as a juvenile, he would have been confined in a juvenile facility only to age twenty-one. Accordingly, he complained of the trial court's ruling of April 14, 1975, upsetting the guilty plea and remanding him to the sheriff for trial for first degree murder in the adult district court.
To entertain defendant's contention that he was due juvenile punishment for his second degree murder plea, and that, in light of the state's accepting a plea to second degree murder, prosecution anew for first degree murder was impermissible, this Court on June 17, 1975, granted the writ in part and ordered the trial court "to conduct an evidentiary hearing to determine the nature, content and effect of the plea bargain agreement. Other proceedings stayed pending that hearing."
*208 In response to that action by this Court the trial judge, on June 19th, set an evidentiary hearing for July 14, 1975. On that day, on motion of counsel for the defendant, Judge Marino recused himself because he was to be called to testify about the circumstances surrounding the earlier plea. The hearing was thereafter conducted by Judge Bradley.
At that hearing, there was some disagreement about whether the defendant had been promised he might serve his time at DeQuincy rather than Angola. Nevertheless it was evident that he entered his plea to second degree murder with the punishment to be life imprisonment at hard labor, in order to avoid exposure to the death penalty. There was clearly no deal or understanding that he would be treated as a juvenile upon entering the second degree murder plea. At the conclusion of the hearing, Judge Bradley ordered that the evidentiary hearing be transcribed and placed at the disposal of this Court for its study. He went on to recite that because this Court may have expected him to make a ruling at the conclusion of the evidentiary hearing, he would do so. And he ruled that the plea of May 31, 1974 was voluntary.
The transcript of that July 14, 1975 hearing was filed in this Court on September 5, 1975. Defendant, who had been returned from Angola on April 10, 1975, for the purpose of the evidentiary hearing, was returned to Angola on July 29, 1975.
Then on April 9, 1976, in proceedings No. 57838 on the docket of this Court, defendant through counsel applied here again contending that inasmuch as the hearing had been conducted pursuant to our order of June 17, 1975, to probe into the circumstances surrounding the entry of the guilty plea of May 31, 1974, this Court should rule on the substance of his contentions (those contained in his March 31, 1975 district court habeas petition and his writ No. 56304 in this Court). Therein he had claimed as we have already noted that he should not have been remanded to the sheriff for trial on first degree murder, but should either have been released or permitted to have the second degree murder plea maintained, with juvenile punishment imposed.
This Court on April 30, 1976, denied the writ observing that relator was not entitled to any such relief. Justice Dixon concurred in the denial being of the opinion that the applicant "cannot receive a more serious sentence than that previously imposed." As was the custom of this Court at that time, due notice of the action on the writ was sent to the proper parties and authorities involved and to the lower court. Inasmuch as the ruling under consideration was the trial judge's vacating and remanding for trial on first degree murder, this Court's denial placed the case in the posture of being ready for trial on the first degree murder indictment.
No further action was taken on this case in the district court or in this Court for more than three years during which time defendant has been in Angola without an outstanding conviction. Thereafter the following took place:
On March 7, 1980, Walgamotte, apparently mistaken about the status of his case, filed a pro se writ application in the district court to have the original plea vacated and to be released from confinement since by then he was twenty-one years old. Judge Marino dismissed defendant's habeas petition on May 12, 1980, as "being res judicata in being fully litigated" (sic). No. 80-K-1488 on this Court's docket, a pro se writ application by defendant, was filed on July 1, 1980 complaining of Judge Marino's dismissal and seeking to have the original plea vacated. On February 13, 1981, this Court denied the application with the following language:
By this application relator seeks to have his guilty plea to and the resultant conviction for second degree murder vacated. The application is denied because the request is moot. Information supplied this Court indicates that on April 14, 1975, the trial judge ordered the guilty plea withdrawn and relator remanded to parish prison to await trial for first degree murder. The stay order granted applicant by this Court on June 17, 1975, in connection *209 with an earlier application by this relator coincident with our ordering the trial court to conduct an evidentiary hearing regarding relator's guilty plea, is no longer in effect.
The Chief Justice concurred: "It appears that relator is in Angola under a sentence vacated six years ago and there are no charges against him."
Thereafter defendant filed a pro se habeas petition in the district court on February 19, 1981, seeking relief and citing the language employed in the writ denial in No. 80-K-1488 and the Chief Justice's concurring language.
One month later, without the trial judge's having ruled on his March 19, 1981 filing in that court, Walgamotte filed a pro se habeas application in this Court (March 23, 1981, No. 81-KH-0792) to have us require the district court to rule. On April 17, 1981 having learned that the trial court had taken action on March 27, 1981, concerning defendant's February 19, 1981 filing, we denied the writ as moot. The trial court had dismissed the application "as it pertains to release" and had ordered that "the defendant be transported and held without bond for trial of First Degree Murder." Counsel was appointed on June 9, 1981 (coincidentally, the same lawyer who had been appointed to represent him shortly after his 1973 indictment[5]) and the case set for trial on October 14, 1981.
On July 30, 1981, defendant's attorney Caire filed a motion to quash the indictment complaining that there had been an uninterrupted three year delay following indictment without the state's having brought defendant on for trial. Alternatively, the defendant argued in the motion to quash that his being fifteen at the time he pleaded guilty to second degree murder placed him under the juvenile laws of the state. The juvenile laws provide for release at age twenty-one. Since defendant was then twenty-three years old, he should be released.
On September 18, 1981, the trial court denied the motion to quash, finding, on the one hand, that the defendant was not under the authority of the juvenile courts and, on the other, that the time limitations had been interrupted by the defendant's actions in filing the various writ applications. The judge also alluded to principles of estoppel.[6]
On November 27, 1981 we granted defendant's writ application to review the denial of the defendant's motion to quash. We turn now to consideration of the substance of relator's complaint.
The prosecution of Charles Walgamotte for his part in the crime of first degree murder was properly instituted by grand jury indictment, signed a "true bill" on August 17, 1973. The history of that prosecution, recited hereinabove, reveals that defendant pled guilty to second degree murder in the district court for the parish of St. John the Baptist on May 31, 1974 with the consent of the district attorney. C.Cr.P. art. 558; State v. Green, 263 La. 837, 269 So.2d 460 (1972). The district attorney acquiesced in the plea, as permitted by C.Cr.P. art. 487. State v. Green, supra. There was *210 no formal amendment of the 1973 indictment. When the district judge vacated the defendant's guilty plea to second degree murder after the hearing held on April 14, 1975, the 1973 indictment was still outstanding and formed the basis for the trial judge's remanding Walgamotte to the St. John the Baptist Parish prison on that day to await trial for first degree murder.
The proceedings which took place thereafter, culminating in the writ denial by this Court on April 30, 1976, did serve to suspend the running of the time limitations for commencement of trial. Those proceedings included a stay of proceedings on June 17, 1975, an evidentiary hearing on July 14, 1975, the transmission to this Court of the transcript to this Court on September 5, 1975, and writ application of April 9, 1976. These interrupting legal skirmishes concluded on April 30, 1976, when we denied defendant's application and upheld the trial judge's ruling of April 14, 1975, wherein the trial judge had ordered the defendant held over for trial as an adult on first degree murder. The district attorney of St. John the Baptist Parish had from that point three years in which to bring Charles Walgamotte to trial as an adult on the first degree murder charge.[7] That trial should therefore have been commenced on or before April 30, 1979. Any effort by the defendant after April 30, 1979 to secure his release from confinement, which he had reason to believe was illegal, has no bearing on the time limitations which had already expired and the legal effect thereof. Therefore the state's contention that the defendant's April 27, 1981 writ application had served to interrupt the time available for commencing trial is without merit.
A motion to quash the indictment is the proper procedural vehicle for challenging an untimely commencement of trial. C.Cr.P. art. 581 and C.Cr.P. art. 532(7). For a capital offense, trial must begin within three years of the date of the institution of the prosecution. C.Cr.P. art. 578(1). As noted in the official comment (a) to this codal provision, Louisiana allows the state a considerably longer time period in which to begin trial than do other states.
In State v. Theard, 212 La. 1022, 34 So.2d 248 (1948) quoting State v. Theard, 203 La. 1026, 14 So.2d 824 at 825 (1943), we considered the purpose of statutory requirements of dismissal when legislatively mandated time limitations have elapsed. They are:
to enforce the right of an accused to a speedy trial and to prevent the oppression of citizens by suspending criminal prosecutions over them for an indefinite time as well as to prevent delays in the administration of justice by imposing on judicial tribunals an obligation of proceeding with reasonable dispatch in the trial of criminal accusations. (Emphasis added.)
More recently, in State v. Alfred, 337 So.2d 1049 (La.1976) (On rehearing), we noted specifically at 1055-1056:
... in a capital case Article 578 of the Code of Criminal Procedure allows a delay of three years from the date of institution of the prosecution within which the trial may be commenced. Such an enactment is a recognition by the legislature that the time limitation thereby ordained is reasonable and acceptable under ordinary circumstances. Statutes of limitation are the primary guarantees against inordinate delays between accusation and trial. La.Code Crim.Pro. arts. 578-82; 18 U.S.C.A. §§ 3281-82; United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); State v. Howard, 325 So.2d 812 (La.1976); State v. Stetson, 317 So.2d 172 (La.1975); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972). These statutes represent a legislative assessment of relative interests of the State and defendant in administering and receiving justice, and they should be considered by the courts. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Theard, 203 La. 1026, 14 So.2d 824 (1943).
*211 The Code of Criminal Procedure does however allow for the interruption of time limitations in the instances enumerated in C.Cr.P. art. 579. C.Cr.P. art. 579(2) on which the state relies provides in pertinent part for the interruption of time limitations if:
(2) The defendant cannot be tried ... for any other cause beyond the control of the state.
However the State bears the burden of proving that it was beyond its control to try the defendant within the statutory time delays. State v. Devito, 391 So.2d 813 (La. 1980) (On rehearing).
The state has not borne its burden of showing that commencing the trial of Charles Walgamotte for first degree murder within three years after April 30, 1976 was beyond their control. The defendant was within reach of the state, either in the custody of the sheriff of St. John the Baptist Parish or of the warden at Louisiana State Penitentiary at Angola. There was nothing preventing the state from compelling his presence for trial, as they eventually did in 1981. The state failed to begin trial within three years under La.C.Cr.P. 578.

Decree
The district court's denial of defendant's motion to quash is therefore reversed. The motion is granted.
DISTRICT COURT RULING REVERSED; MOTION TO QUASH GRANTED.
WATSON, J., concurs noting that the defendant must now be discharged.
LEMMON, J., dissents and will assign reasons.
NOTES
[1] The defendant has been incarcerated continuously since his arrest on July 9, 1973: eleven months in the St. John the Baptist Parish jail and seven years in the Louisiana State Penitentiary at Angola, excluding three months in 1975 when he was temporarily back in St. John the Baptist Parish for post conviction hearings.
[2] C.Cr.P. art 578 reads as follows:

Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
(3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation.
[3] C.Cr.P. art 579 reads as follows:

The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
[4] Since our Moore decision, the law relative to juvenile crimes and jurisdictions has been changed. See generally: State v. Lacour, 398 So.2d 1129 (La.1981); State ex rel Johnson, 384 So.2d 402 (La.1980); State v. Sheppard, 371 So.2d 1135 (La.1979); State ex rel Davis, 368 So.2d 1092 (La.1979); State ex rel Coco, 363 So.2d 207 (La.1978). Under the most recent constitutional changes the Legislature is invested with a greater role. La.Const. Art. V § 18 and § 19. Furthermore by Acts 1975, No. 337 § 1, the Legislature amended La.R.S. 13:1570 to provide for the district court's retaining jurisdiction over a juvenile defendant who, when charged with the greater crime which confers district court jurisdiction, pleads guilty to a lesser included offense.
[5] It appears from the record that attorney Caire's initial representation of the defendant was for the period from arraignment on August 27, 1973 through sentencing on May 31, 1974. Attorney James Woods represented Walgamotte in the proceedings relative to writ applications from May 14, 1975 through April 30, 1976. From March 8, 1980 through June 9, 1981, Walgamotte acted on his own behalf through pro se filings in the district court and in this Court.
[6] The trial judge stated from the bench:

This Court is of the opinion that in reference to Article Number One, Article 578.1, the capital case, stating that three years of prosecution, this Court is of the opinion that when this particular matter was set for trial on the first degree murder case is that counsel for the defendant and the defendant sought another remedy of which the remedy was by writ or by the appellate process of the Supreme Court, and at this particular time, this Court finds that the prescription was either suspended or interrupted, and really at the most is that equitable estoppel would work in this particular regard in that the State was at the particular time waiting for the Supreme Court to make whatever decision that they should have made in reference to this particular matter (sic).
[7] We note that the present district attorney for St. John the Baptist Parish did not take office until January 1, 1979.