439 So.2d 410 (1983)
STATE of Louisiana
v.
Andrew G. TAYLOR.
No. 83-KK-0751.
Supreme Court of Louisiana.
October 17, 1983.
*411 David Price, Baton Rouge, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Samera Abide, Asst. Dist. Attys., for respondent.
CALOGERO, Justice.[*]
In 1978 defendant was charged by bill of information with driving while intoxicated second offense, a violation of La.R.S. 14:98(C), a misdemeanor. In 1982, after the trial court denied his motion to quash on grounds that the prosecution was not timely, he was found guilty as charged. The trial court sentenced him on March 1, 1983, to a six month prison term and a fine of $400.00 plus court costs. Because appeal was not available (La. Const. art. V, § 8), Taylor applied for supervisory writs and the Court of Appeal denied. This Court granted the defendant's application for supervisory writs to review the rulings below relative to the timeliness of the prosecution.
More than one year elapsed between the time prosecution for this misdemeanor was instituted and the defendant was brought to trial. La.C.Cr.P. art. 578. Because there was no legal excuse for the delay in trial under La.C.Cr.P. art. 579, the motion to quash should have been granted. La.C. Cr.P. art. 578 therefore bars this untimely prosecution. Accordingly, the defendant's conviction and sentence are reversed and the defendant is ordered discharged.
The facts are as follows:
On February 26, 1978, defendant Andrew G. Taylor was arrested and charged with driving while intoxicated. R.S. 14:98. That same day he posted bond, listing his address at "837 N. 6th [Street] Apt 6 B(aton) R(ouge), La." A bill of information charging defendant with second offense DWI, a misdemeanor, was filed on October 18, 1978. In the ordinary course of events, the state would have had until October 18, 1979, to bring the matter to trial. La.C. Cr.P. arts. 382, 578 and 934(7). Defendant's trial did not commence, however, until August 11, 1982.
What occurred in the interim was the following. After the bill of information had been filed, arraignment was fixed for November 22, 1978, pursuant to which the East Baton Rouge Sheriff's Department attempted to serve notice of the proceeding on Taylor. Service was first made, however, at "1837 North 6th Apt. 6," the address appearing on the traffic citation issued by the state trooper on February 26, 1978. The subpoena was returned to the court with the notations "unable to locate," and "no such number." The court corrected the address, reset arraignment for December 18, 1978, and ordered a subpoena served *412 at "837 North 6th Apt. 6." This service was also unsuccessful; the return, dated November 28, was marked "unable to locate," and "moved to..." When Taylor failed to appear for arraignment on December 18, 1978, a bench warrant for his arrest was issued.
According to the minutes, defendant next appeared in court on July 7, 1981, some thirty-one months after the filing of the bill of information. On that date, July 7, 1981, he was arraigned and entered a plea of not guilty. Several weeks later, but before trial, counsel filed a motion to quash alleging that the prosecution was untimely. C.Cr.P. art. 578.
On August 11, 1982, the district court heard testimony and denied the motion to quash. Trial immediately followed. Taylor was convicted. For the following reasons, we find the lower courts erred. Defendant's motion to quash should have been granted.
The time limitation for bringing a misdemeanor case to trial is one year from the institution of prosecution. La.C.C. art. 578 reads in pertinent part: "Except as otherwise provided in this Chapter, no trial shall be commenced: ... (3) In misdemeanor cases after one year from the date of institution of the prosecution."
In this case, the prosecution of Andrew Taylor for his driving while intoxicated second offense was instituted when on October 18, 1978, a bill of information was filed by the East Baton Rouge district attorney's office. For all intents and purposes, then, the defendant's trial should have been begun on or before October 18, 1979.
A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. La.C.Cr.P. arts. 581 and 532(7); State v. Walgamotte, 415 So.2d 205 (La.1982). Once a motion to quash has been filed for untimely prosecution the state is under a heavy burden to show a legal cause for the delay. State v. Nations, 420 So.2d 967 (La.1982); Walgamotte, supra; State v. Guidry, 395 So.2d 764 (La.1981); State v. DeVito, 391 So.2d 813 (La.1980) (On Rehearing); State v. Driever, 347 So.2d 1132 (La.1977). In this case, the defendant argues with merit that there is no basis under La.C.Cr.P. art. 579 for the state to claim an interruption in the period of limitation.
La.C.Cr.P. art. 579 provides the statutory bases for relieving the state, under certain circumstances, of the necessity of bringing a defendant to trial within the time limitations expressed in La.C.Cr.P. art. 578. La. C.Cr.P. art. 579 provides:
The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
When reviewing a case where trial has been initiated beyond the statutory delays, we have held the state to a heavy burden of showing just and legal cause for the interruption in a defendant's prosecution.
In Nations, the defendant was arrested and charged with a misdemeanor. He posted bond and listed his current address as well as his employer's address on the bond. When service was attempted, defendant had moved and could not be served at his residence. Even though the defendant changed apartments twice, he notified his bonding company of each change of address, filed a change of address form with the Post Office, and maintained a correct listing with the telephone company. The court held that the state had failed to establish that the defendant absented himself from his usual place of abode within the state with the purpose of avoiding prosecution.
*413 In Guidry, a misdemeanor case involving a driving while intoxicated charge, the defendant had moved by the time service was attempted. Another service attempt was made at the correct address, but was unsuccessful. A bench warrant was issued and notice ordered served on the surety. Because the state failed to follow up on that notice for almost two years, and because the defendant testified he was available for service through his surety, the court ruled the state failed to meet its heavy burden of showing legal cause sufficient to interrupt the time for commencement of trial.
In this case, the evidence at the hearing on the motion to quash established that Taylor lived at 837 North 6th Apt. 6 in Baton Rouge from December, 1977 until April, 1979. He was therefore amenable to service in November, 1978, and for at least five months thereafter. Despite the state's contention that all due, diligent efforts were made to subpoena this defendant for trial, the evidence of an unsuccessful attempt at service in November of 1978 is insufficient to meet the State's heavy burden in establishing that the defendant was absent from his usual place of abode with the intention to avoid prosecution or that the state was unable by legal process to obtain the defendant's presence for trial.
At the hearing on the motion to quash, State Trooper Dawson testified that he had issued several citations to Taylor on February 26, 1978, whereupon Taylor had given his address as "1837 North 6th Apt. 6." It was that address which the officer placed on the citations.
Major Brown of the Baton Rouge Sheriff's Office testified that as a corporal he had attempted to serve a subpoena on Taylor first on October 20, 1978, at "1837 North 6th Apt. 6," but without success, because he could find no such number. A return bearing Brown's signature shows service attempted at 1837 North 6th St., Apt. 6, Baton Rouge, La. on "10/20" "Unable to locate; No such number." After the address was corrected by the court to "837 North 6th Apt. 6," the address appearing on Taylor's bond, Brown again attempted service. During this attempt, he said that he met an unidentified man in the apartment house parking lot who told Brown that he did not know Taylor and did not think that Taylor lived in apartment No. 6. Brown then endorsed the return "11/28" "Unable to locate," and "Moved to..." As was customary when unable to serve an individual, Brown testified, he left a Sheriff's Office card with office and home phone numbers thereon. Brown also testified that a "third" attempt was made to serve Taylor. He could not, however, furnish the date. Nor does the record contain a return on this attempt. On this third visit, Brown testified that he found no one home and left a sheriff's card marked in red, "Final notice." Brown could not be sure whether the apartment was occupied or vacant, because the "curtains were pulled and ... you couldn't see through it."
Taylor testified that it was his understanding that he would be notified by mail about his court appearance on the DWI charge, and that he received no such notice.[1] According to Taylor, he was living at 837 North 6th Apt. 6 in Baton Rouge from approximately December 1977 to April of 1979, and was working as a bricklayer 12 to 13 hours a day, including Saturdays. His roommate, one Rosemary Turner, was employed at a hospital pharmacy for 10 hours a day and would go to her mother's until Taylor got off work because she did not like to stay in the apartment alone. Taylor stated that the lease was in Ms. Turner's name although he had never seen it. The two of them shared the rent, but he was not on a first-name basis with anyone in the apartment complex. He further testified that the bonding company had his correct address and that when he moved in April, 1979, to Banks Street he notified his probation *414 officer (for an unrelated matter in city court).
The state suggests that Taylor's activities after April, 1979, made his presence for trial unobtainable by legal process, and that the defendant's failure to notify the court in which the DWI charge was pending of his new address evidences an intent to avoid prosecution. Accordingly, the state contends that the limitation for trial commencement was interrupted under La.C. Cr.P. art. 579. That conclusion is not supported by the evidence in this record.
All the state can muster to try to prove an alleged intent to avoid prosecution is the following. After his move to Banks Street some five months after the last effort of the state to locate him, Taylor left Louisiana on vacation with his parents; he returned to Louisiana for three or four months, and then moved to Cincinnati where he remained for two years. There was no testimony concerning whether Taylor notified his probation officer of his move to Cincinnati. During the two years he resided in Cincinnati, he made no inquiries about the pending DWI nor did he notify the court of his new address, although he admitted that it violated the terms of his bond not to do so. Although the record is not clear, it appears that defendant eventually returned to Louisiana and was arrested on the open warrant after the police stopped him for an unrelated matter.
In State v. Campbell, 404 So.2d 956 at 959 (La.1981), this Court stated that the
burden of proving that the defendant's purpose in remaining outside the state was to avoid detection, apprehension, or prosecution ... rests, of course, on the state.
* * * * * *
[T]he record must `clearly' establish that the purpose of the defendant's absence was to avoid detection, apprehension or prosecution. State v. Driever, 347 So.2d 1132 (La.1977); State v. Guidry, 395 So.2d 764 (La.1981); State v. Wicker, 391 So.2d 845 (La.1980).
There has been no such clear showing that the defendant moved to Banks Street in Baton Rouge and then to Cincinnati, for the purpose of avoiding detection, apprehension, or prosecution on the DWI matter. All that was shown was that the defendant did not notify the court of his move to Banks Street, nor of his move thereafter to Cincinnati. That negative fact is not, alone, sufficient proof of an intent to elude authorities on charges arising from his February, 1978, traffic citations, especially when he testified that he thought the state would probably be the initiator in any subsequent court action arising from the incident.
More significantly, the state offered insufficient evidence to prove that Taylor was not amenable to service at 837 North 6th Apt. 6 for the period between November 28, 1978, and April 1979.
Discounting as irrelevant the first unsuccessful attempt to serve the defendant at the erroneous address "1837 North 6th," the record contains evidence of one return being filed by a member of the Sheriff's Office. That return, partially dated "11/28" and endorsed "unable to locate" and "moved to..." even coupled with the alleged subsequent attempt by Brown, not supported by a return in the record, does not constitute a due and diligent effort to subpoena the defendant.
The state failed to carry its heavy burden to show an interruption of the time limitations in accordance with La.C.Cr.P. art. 579. Hence, the one year limitation found in La.C.Cr.P. art. 578 controls, and Taylor's prosecution for the February 28, 1978, offense is barred.

Decree
Because defendant's motion to quash is meritorious and should have been granted by the district court, his conviction and sentence are reversed and defendant is ordered discharged.
REVERSED.
LEMMON, J., dissents.
NOTES
[*] Julian Bailes, Associate Justice ad hoc, sitting for Associate Justice Walter F. Marcus, Jr.
[1] Compare, City of Baton Rouge v. Wheat, 377 So.2d 1234 (La.1979) where the defendant refused to accept the traffic citation bearing a court date. She received no other notice within a year after prosecution was begun. This Court reversed a lower court's finding that her initial refusal to accept the traffic citation interrupted the running of the time limitation.