NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-531

STATE OF LOUISIANA

VERSUS

C.W.W.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-367-07
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Elizabeth A. Pickett,
Judges.

AFFIRMED.

David W. Burton
District Attorney
36th Judicial District
P. O. Box 99
DeRidder, LA 70634
(337) 463-5578
Counsel for Appellee:
    State of Louisiana

**Richard F. Blankenship**
**Assistant District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(318) 463-5578**
**Counsel for Appellee:**
     **State of Louisiana**

**Mitchel M. Evans II**
**Attorney at Law**
**416 North Pine Street**
**DeRidder, LA 70634**
**(337) 462-5225**
**Counsel for Defendant/Appellant:**
     **C.W.W.**

**DECUIR, Judge.**

Defendant, C.W.W.[1], was charged by bill of information filed on April 24, 2007, with the following: (1) attempted aggravated rape, in violation of La.R.S. 14:42 and La.R.S. 14:27; (2) molestation of a juvenile, in violation of La.R.S. 14:81.2; and (3) theft of a thing having a value greater than $500.00, in violation of La.R.S. 14:67. Defendant filed a Motion to Quash alleging the State had failed to bring him to trial within the two years provided for by La.Code Crim.P. art. 578. The motion was denied, and subsequently Defendant entered a guilty plea pursuant to both *State v. Crosby*, 338 So.2d 584 (La.1976), and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), to the amended charge in count two of indecent behavior with a juvenile, in violation of La.R.S. 14:81, and to theft of a thing having a value greater than $500.00. The charge of attempted aggravated rape was dismissed. Defendant was then sentenced to concurrent sentences of seven years at hard labor for indecent behavior and ten years at hard labor for theft.

Defendant is now before this court asserting one assignment of error. Therein, he contends the trial court erred in denying his Motion to Quash.

## FACTS

Police reports indicate Defendant dragged A.T. through her home, choked her, ripped her shirt and bra, inserted his fingers into her vagina, and bit her chest. Defendant's acts were interrupted by the arrival of A.T.'s boyfriend, J.G. Defendant then fled in a vehicle belonging to A.T.'s parents.

---

[1]The Defendant's initials are being used in accordance with La.R.S. 46:1844(W).

**ASSIGNMENT OF ERROR**

In his only assignment of error, Defendant contends the trial court erred in denying his Motion to Quash. Defendant argues that both his statutory and constitutional rights to speedy trial were violated. We will discuss the statutory and constitutional issues separately.

**STATUTORY RIGHT TO SPEEDY TRIAL**

"As a general matter, the state has two years from the institution of prosecution to begin trial of a non-capital felony. La.C.Cr.P. art. 578(A)(2)." *State v. Romar*, 07-2140, p. 3 (La. 7/1/08), 985 So.2d 722, 725. In the case at bar, prosecution commenced with the filing of the bill of information on April 24, 2007. The charged offenses were non-capital felonies; thus, the State had until April 24, 2009, to bring Defendant to trial. La.Code Crim.P. art. 578.

A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. *See* La.Code Crim.Proc. arts. 532(7), 581; *see also State v. Brown,* 451 So.2d 1074 (La.1984); *State v. Taylor,* 439 So.2d 410 (La.1983); *State v. Walgamotte,* 415 So.2d 205 (La.1982). When defendant has brought an apparently meritorious motion to quash based on prescription, the state bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled. *See Brown,* 451 So.2d 1079; *State v. Taylor,* 439 So.2d 410, 412 (La.1983); *State v. Walgamotte,* 415 So.2d 205 (La.1982); *State v. Nations*, 420 So.2d 967 (La.1982); and *State v. Driever,* 347 So.2d 1132 (La.1977).

> An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute, in this case two years. The Louisiana Code of Criminal Procedure article 579(A)(2) provides in pertinent part that the two-year period of limitation will be interrupted if the defendant "cannot be tried because of insanity or because his presence for trial cannot be obtained

2

by legal process, or for any other cause beyond the control of the state." Once the cause of interruption disappears, the two-year time limit begins anew. *See* La.Code Crim.Proc.Ann. art. 579(B). In contrast, the prescriptive period is merely suspended, until the trial court rules on the filing of preliminary pleas. The relevant period is simply not counted, and the running of the time limit resumes when the motions are ruled on. Note, however, that "in no case shall the state have less than one year after the ruling to commence the trial." La.Code Crim.Proc.Ann. art. 580.

*State v. Rome*, 93-1221, p. 4 (La. 1/14/94), 630 So.2d 1284, 1287 (footnote omitted).

In this case, the trial of this matter was reset for August 17, 2009, which was outside the two-year time period to commence trial. The State argues that Defendant did not object to the State's motions to refix the trial date and, therefore, may not now complain about this issue and assert there was no basis for the resetting of trial. La.Code Crim.P. art. 841. We find no cases involving the statutory right to speedy trial in which a court has held that by failing to object to the setting of a trial outside the two-year time limitation, a defendant acquiesced in the setting.

Accordingly, we must determine if there was a suspension or interruption of the prescriptive period in the case at bar.

The State has asserted that J.G.'s military service made him unavailable during a portion of the two-year time period and that this served as an interruption of the time in which the State had to commence trial. The record reflects the following with regard to J.G.'s location and availability:

11/30/07 - 6/26/08  - "A School" in Great Lakes, Illinois.

7/14/08 - 11/11/08 - "C School" in Norfolk, Virginia.

1/4/09 - 6/26/09 - Deployed to the Persian Gulf.

6/29/09 - 9/14/09 - "C School" in San Diego, California.

3

Defendant asserts that a *subpoena ad testificandum* could have been issued for the presence of J.G. Such a subpoena is governed by La.Code Crim.P. art. 741, *et seq.*, which deal with subpoenas to obtain witnesses from other states. J.G. was serving in the military. Federal law provides that members of the United States Navy may refuse out-of-state service of process by mail and by process server. 32 C.F.R. § 720.20. Moreover, 32 C.F.R. § 720.21, which governs service of process and subpoenas to members or civilian employees of the United States Navy, classifies persons serving overseas as unavailable. Therefore, J.G. was beyond the subpoena power of the trial court and unavailable while he was in the Persian Gulf.

The State argues the matter is distinguishable from *State v. Driever*, 347 So.2d 1132 (La.1977), where the court found that the State could not rely on the indefinite unavailability of a witness to interrupt the prescriptive period. We agree. In this case, the State knew when J.G. would be available, set the trial date accordingly, and proceeded to prepare for trial.

Accordingly, we find the prescriptive period was interrupted while J.G. was shipboard in the Persian Gulf from January 4 through June 26, 2009. Thus, the State had two years from the date J.G. became available to commence trial. La.Code Crim.P. art. 579(B). The Motion to Quash was filed prior to the running of the time limitation and was, therefore, properly denied.

## CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

We will now address Defendant's constitutional right to speedy trial.

The constitutional right to a speedy trial is imposed upon the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The underlying purpose of this constitutional right is to protect a defendant's interest in preventing pretrial incarceration, limiting possible impairment of his defense, and minimizing his anxiety and

concern. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The Supreme Court has set forth the following four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of his right to speedy trial; and (4) the prejudice to the accused resulting from the delay. *Id.* at 531-532, 92 S.Ct. at 2192-93; *see also State v. Reaves,* 376 So.2d 136 (La.1979) (adopting *Barker* factors). The specific circumstances of a case will determine the weight to be ascribed to the length of and reason for the delay because "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Reaves,* 376 So.2d at 138 (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192).

*State v. Batiste*, 05-1571, pp. 6-7 (La. 10/17/06), 939 So. 2d 1245, 1250.

The Length of the Delay

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Barker*, 407 U.S. at 530-31, 92 S.Ct. 2191 (footnote omitted).

The time between the filing of the bill of information and the Motion to Quash was approximately twenty-eight months. In *State v. Larkins*, 97-2898 (La.App. 4 Cir. 2/18/98), 707 So.2d 1331, *writ denied*, 98-659 (La. 4/24/98), 717 So.2d 1179, the fourth circuit held that a twenty-six month delay and a twenty-one month delay were presumptively prejudicial, triggering an analysis of the other three *Barker* factors. In *State v. Love*, 00-3347 (La. 5/23/03), 847 So.2d 1198, the court found a twenty-two month delay was presumptively prejudicial.

The Reason for the Delay

Closely related to length of delay is the reason the government assigns to justify the delay. . . . [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to

5

hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. 2191 (footnote omitted).

The State reset this matter for trial several times. The reason given for the resetting at the hearing on the Motion to Quash was that J.G. was not available to testify. Additionally, results of a DNA analysis were not provided to Defendant until June 15, 2009, Defendant was interested in those results, and admitted he could not cross-examine undeveloped forensic evidence. Furthermore, in brief to this court, Defendant asserts he could not have filed a motion for speedy trial as DNA evidence that could have been outcome determinative had not been completed, so neither he nor the State was prepared to proceed to trial.

In this case, Defendant acquiesced in the delay. Further, he was not interested in proceeding to trial, as he was concerned about the results of a DNA analysis and the results were not sent to Defendant until June 15, 2009.

Assertion of the Right to Speedy Trial

> We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531-32, 92 S.Ct. 2192-93 (footnotes omitted).

6

Although the Defendant sent correspondence to the trial court complaining that his trial had been continued, he never asserted his right to speedy trial prior to the filing of the Motion to Quash.

Prejudice as a Result of the Delay

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker*, 407 U.S. 532-33, 92 S.Ct. 2193 (footnotes omitted).

Defendant asserts he was prejudiced by the delay because his mother and step-father, who were to be character witnesses for him and were to pay for experts who would testify regarding his defense, died before his trial was held.

Defendant filed his notice of defense on January 18, 2008. The first trial fixing was for February 19, 2008. The record indicates Defendant's mother died on

7

February 22, 2008, and his step-father died on February 29, 2008. If experts were to be hired to prepare for trial, they were not hired prior to the first trial fixing and the deaths of Defendant's mother and step-father.

After reviewing the *Barker* factors, we find the trial court did not err in denying Defendant's Motion to Quash on constitutional grounds.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.