860 So.2d 220 (2003)
STATE of Louisiana
v.
Carlos CARCAMO.
No. 03-KA-589.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*221 Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellant.
Letita J. Parker-Davis, Gretna, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
The State of Louisiana appeals the trial court's grant of defendant Carlos Carcamo's Motion to Quash. We affirm.
On January 4, 1999, the Jefferson Parish District Attorney's Office filed a Bill of Information charging defendant with one count of aggravated incest in violation of LSA-R.S. 14:78.1 and one count of molestation of a juvenile in violation of LSA-R.S. 14:81.2. On May 7, 1999, defendant failed to appear for arraignment and the matter was continued without date. The minute entry on that date indicates that defendant had yet to be arrested. The record indicates that the State made two unsuccessful attempts at service on defendant at 2317 Guiffrais[1] Street, Apartment C, Metairie, Louisiana. On February 8, 1999, the sheriff's return for the service attempt for the arraignment stated "numerous attempts made, no response." On March 22, 1999, the sheriff's return states "not at this address per resident." After learning defendant had moved to Virginia, the State made a third and final attempt at service via certified mail addressed to defendant at 2143 Newbury Road, Norcross, Virginia. The subpoena was not served as the certified letter was "returned for a better address."
On January 6, 2003, after having been arrested, defendant was arraigned on the charges and entered a plea of not guilty. On January 8, 2003, defendant filed various pretrial motions, including a Motion to Quash the Bill of Information based on LSA-C.Cr.P. arts. 382 and 578. On February 5, 2003, the State and defendant submitted the matter on the record, and the trial court granted the Motions to Quash on both grounds. Thereafter, the State filed a timely Motion for Appeal.

ASSIGNMENT OF ERROR NUMBER ONE
Whether the trial judge erred in granting the Motion to Quash.
The trial judge granted the defendant's Motion to Quash on two grounds: (1) the State improperly instituted prosecution by using a "direct bill," a method not recognized under LSA-C.Cr.P. art. 384, and (2) the State failed to bring defendant to trial within two years of the institution of prosecution *222 as required by LSA-C.Cr.P. art. 578(2). The State contends that the trial court erred in granting defendant's Motion to Quash because prosecution was properly instituted by a Bill of Information. Additionally, the State argues that, while trial was not commenced within two years from the institution of prosecution, the period of limitation was interrupted when defendant remained outside of the State for the purpose of avoiding detection. Defendant responds that prosecution was instituted by a "Direct Bill," which is not authorized by LSA-C.Cr.P. art. 578. Also, defendant contends that the State failed to carry its burden of proving that the reason he remained outside of the State was for the purpose of avoiding detection.
LSA-C.Cr.P. art. 382 sets forth the methods of instituting criminal prosecutions and provides in pertinent part: "[a] prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information." In the instant case, defendant was charged with one count of aggravated incest in violation of LSA-R.S. 14:78.1 and one count of molestation of a juvenile in violation of LSA-R.S. 14:81.2. Because neither offense is punishable by death or life imprisonment, prosecution could have been instituted by indictment or by information. LSA-R.S. 14:78.1 and LSA-R.S. 14:81.2. Defendant contends that neither of these methods was utilized in instituting prosecution because defendant was charged by "direct bill," a method not provided for in LSA-C.Cr.P. art. 382.
LSA-C.Cr.P. art. 384 provides that "[a]n information is a written accusation of a crime made by the district attorney or the city prosecutor and signed by him. It must be filed in open court in a court having jurisdiction to try the offense, or in the office of the clerk thereof." Furthermore, LSA-C.Cr.P. art. 463 sets forth the form that a Bill of Information may follow. In the present case, the Bill of Information, which contains the handwritten notation, "direct bill," penned by an unidentified party, substantially follows that form and, in accordance with LSA-C.Cr.P. art. 384, is signed by the Assistant District Attorney and filed with the clerk. A "direct bill" is not listed as a method of instituting prosecution. Here, the Bill of Information in this case was a properly filed Bill of Information. There are cases, however, in which a "direct bill"[2] has been used to institute prosecution. See, State v. Buttner, 411 So.2d 35 (La.1982); State v. Bloomenstiel, 235 La. 860, 106 So.2d 288 (1958); State v. Robinson, 552 So.2d 994, (La.App. 4 Cir.1989).
Based on the foregoing, the trial court erred in granting defendant's Motion to Quash on this basis.
The State also challenges the trial court's ruling granting defendant's Motion to Quash based on the State's failure to timely commence trial. LSA-C.Cr.P. art. 578(2) provides that trial shall commence in non-capital cases after two years from the date of institution of the prosecution. The date of institution of prosecution is the date when the indictment is returned or the Bill of Information is filed. State v. Gladden, 260 La. 735, 743, 257 So.2d 388, 391 (La.1972), cert. denied, 410 U.S. 920, *223 93 S.Ct. 1377, 35 L.Ed.2d 581 (1973); State v. Watts, 99-57 (La.App. 5 Cir.5/19/99), 738 So.2d 628, 629. Upon expiration of this time limitation, the court shall, on motion of defendant, dismiss the indictment and there shall be no further prosecution against defendant for that criminal conduct. LSA-C.Cr.P. art. 581. The right of dismissal is waived unless the Motion to Quash is made prior to trial. LSA-C.Cr.P. art. 581.
On January 4, 1999, the State filed a Bill of Information charging defendant with two non-capital offenses. Therefore, under LSA-C.Cr.P. art. 578(2), the State had until January 4, 2001 to commence defendant's trial, which the record indicates it had not done. When defendant has brought an apparently meritorious Motion to Quash based on prescription, the State bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled. State v. Rome, 93-1221 (La.01/14/94), 630 So.2d 1284, 1286. LSA-C.Cr.P. art. 579 provides as follows:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
In the instant case, the State contends that the prescriptive period provided in LSA-C.Cr.P. art. 578 was interrupted when defendant fled the State to avoid prosecution. At the hearing on the Motion to Quash, both defendant and the State submitted the matter on the record. An examination of the record reflects that defendant had not been arrested prior to the filing of the Bill of Information. Thereafter, the State made three unsuccessful attempts at serving defendant with a subpoena providing notice of his arraignment. The first two attempts at service, made on January 27 and February 23, 1999 respectively, were made to defendant at 2317 Guiffrais Street, Apartment C, Metairie, Louisiana. Subsequently, the State learned that defendant had moved to Norcross, Virginia.[3] On April 7, 1999, the State made one attempt at service to defendant at 2143 Newbury Road, Norcross, Virginia, via certified mail. The certified letter was "returned for a better address" and defendant remained unserved. The record does not reflect that the State made any further attempts at service.
Although the prescriptive period of LSA-C.Cr.P. art. 578 may be interrupted by defendant's presence outside of the State under C.Cr.P. art. 579(A)(1), the State bears the heavy burden of establishing that the purpose of the defendant's absence from the State was to avoid detection, apprehension, or prosecution. State v. Amarena, 426 So.2d 613 (La.1983); *224 State v. Kraft, 501 So.2d 313, 316 (La.App. 5 Cir.1987), writ denied, 505 So.2d 1140 (La.1987). The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists. LSA-C.Cr.P. art. 579(B).
In the instant case, the record does not reflect when defendant left Louisiana for Virginia, nor was any evidence presented concerning defendant's reasons for leaving the State. The notations in the sheriff's returns do not indicate that defendant was attempting to avoid service. Further, there is nothing in the record that would indicate defendant was even aware of his charges prior to his move to Virginia. Therefore, it does not appear that the State has met its heavy burden because the record does not reflect that defendant's absence from the State was to avoid detection, apprehension, or prosecution.
Although the State does not raise the matter in its brief, interruption also arises when defendant's presence cannot be obtained by legal process or for any other cause that is beyond the control of the State. LSA-C.Cr.P. art. 579(A)(2). The inability to serve a defendant under certain circumstances has been held to constitute interruption. See, State v. Gauthe, 525 So.2d 1193 (La.App. 5 Cir. 1988), writ denied, 532 So.2d 131 (La.1988). However to satisfy its heavy burden in establishing interruption on these grounds, the State is required to exercise due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure his presence for trial once it has found him. State v. Chadbourne, 98-1998 (La.1/8/99), 728 So.2d 832; State v. Estill, 614 So.2d 709, 710 (La. 1993).
In State v. Gauthe, supra, the State issued a subpoena to the defendant for his arraignment directed to the address the defendant furnished at the time of his arrest. The sheriff's return came back three times with the notations "no answer," "no one by that name," and "no one by that name." Eventually, the defendant was arraigned when he appeared in court on another matter. This Court, relying on LSA-C.Cr.P. art. 578(2), concluded that the record reflected the State met its heavy burden in establishing the prescriptive period was interrupted because the defendant's presence at trial could not be obtained by legal process and that it was beyond the control of the State. This Court noted that the record reflected that the defendant had moved frequently, had never had a work address, and failed to advise the court of his many changes of address.
In State v. Taylor, 439 So.2d 410 (La. 1983), defendant was arrested and charged with a misdemeanor, driving while intoxicated, second offense. After his arrest, defendant posted bond, listing his address. When service was attempted, defendant had since moved and could not be served at that address. No further attempts were made to serve defendant. The Louisiana Supreme Court held that the State had not met its heavy burden of showing legal cause sufficient to interrupt the time for commencement of trial reasoning that the State's one unsuccessful attempt at service was insufficient. The Supreme Court noted that the one unsuccessful attempt at service did not constitute a due and diligent effort to subpoena the defendant.
Although, as in Gauthe, three unsuccessful attempts at service were made, that case is distinguishable from the instant case, which appears to be more analogous to Taylor. Here, the record does not indicate that defendant was arrested on the charges nor had he provided an address where he could be served. Therefore, it does not appear, as in Gauthe, that he had *225 a duty to inform the court of any changes in address. Also, unlike Gauthe, there is no indication in the record when or the number of times defendant had moved.
Here, after learning defendant had moved to and was residing at a Norcross, Virginia, address, one attempt at service via certified mail was made on April 7, 1999, but was returned for a better address. An examination of a photocopy of the certified mail envelope reveals the absence of a zip code. Despite this apparent error in addressing the envelope, the record does not reflect any other attempts to serve defendant at the Virginia address. As in Taylor, it does not appear that the State's one unsuccessful attempt at service after learning of defendant's possible whereabouts constituted a due and diligent effort to subpoena the defendant.
Based on the above, it appears the State failed to carry its heavy burden to show an interruption of the time limitations in accordance with LSA-C.Cr.P. art. 579(A)(2). Therefore, it appears that the two-year limitation provided in LSA-C.Cr.P. art. 578(2) controls, and that the trial judge was correct in granting defendant's Motion to Quash.
AFFIRMED
NOTES
[1] The correct spelling is Giuffrias.
[2] Neither the Code of Criminal Procedure nor the case law explains the difference between a direct bill and a Bill of Information. However, a review of case law indicates that a direct bill is used to institute prosecution after initial charges are nolle prossed. See, State v. Buttner, 411 So.2d 35 (La.1982); State v. Bloomenstiel, 235 La. 860, 106 So.2d 288 (1958); State v. Robinson, 552 So.2d 994 (La.App. 4 Cir.1989).
[3] The record indicates that, on February 23, 1999, the State learned from the current resident that the defendant no longer resided at the Metairie address. The record further indicates that the State learned of the defendant's Virginia address on March 22, 1999.