995 So.2d 1242 (2008)
STATE of Louisiana.
v.
Toney D. BAPTISTE.
No. 2008-KA-0054.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 2008.
James D. "Buddy" Caldwell, Attorney General State of Louisiana, Darryl W. Bubrig, Sr., District Attorney of Plaquemines Parish Belle Chasse, LA, Gilbert V. Andry IV, Assistant District Attorney of Plaquemines Parish, New Orleans, LA, for Plaintiff/Appellant.
*1243 Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellee.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge DAVID S. GORBATY.
JAMES F. McKAY III, Judge.

STATEMENT OF CASE
On March 19, 2003, in case number 03-0495, the State filed a bill of information charging the defendant, Toney D. Baptiste, with two counts of armed robbery, in violation of La. R.S. 14:64. The defendant pleaded not guilty at his arraignment on March 31, 2003. A pre-trial conference was set for May 21, 2003, and a hearing on motions was set for June 11, 2003. On June 11, 2003, the trial court was advised of a pro se motion to quash due to double jeopardy. The trial court set a hearing date on the defendant's motion to quash and continued the hearing date to July 9, 2003. On July 9, 2003, the trial court heard arguments on the defendant's motion to quash due to double jeopardy, motion to suppress evidence, motion to suppress identification, and motion for preliminary examination. After hearing evidence and arguments the trial court denied the defendant's motions to suppress, found probable cause, and bound the defendant over for trial. The trial court took the motion to quash due to double jeopardy under advisement. On July 11, 2003, the trial court granted the defendant's motion to quash, finding that the defendant's conviction in St. Charles Parish for possession of stolen property, which arose out of the present incident, precluded his prosecution in Plaquemines Parish for armed robbery. The State appealed the trial court's dismissal of its case to this Court which reversed in part, affirmed in part, and remanded. See State v. Baptiste, 2003-2075 (La.App. 4 Cir. 4/28/04), 875 So.2d 833.
Upon remand, the State petitioned the trial court to set a pre-trial conference. Accordingly, the trial court set a pre-trial conference date of June 17, 2004. The State requested that the trial court's order be served on the defendant personally at his St. Charles Parish address as well as on his court-appointed attorney. State's exhibit 3 reveals that the order setting the pre-trial conference was served by a St. Charles Parish deputy upon the defendant by way of domiciliary service on May 15, 2004. The defendant failed to appear for the June 17, 2004, pre-trial conference. On June 19, 2004, the trial court issued an arrest warrant for the defendant based upon his failure to appear at the June 17, 2004, pre-trial conference. The State did not learn of the defendant's whereabouts until March 23, 2007. Specifically, James Bridges, of the Plaquemines Parish Sheriff's Office, testified at the hearing on the motion to quash that he had received a phone call from the St. Charles Parish Sheriff's Office on March 23, 2007, that the defendant was incarcerated in St. Charles Parish and was ready to be released. Bridges also noted that prior to March 23, 2007, they had received no notice as to the defendant's whereabouts. Furthermore, Bridges testified that after receiving notice of the defendant's whereabouts he was picked up on March 24, 2007 and taken to Plaquemines Parish in connection with the outstanding arrest warrant. Documents in the record indicate that the defendant was arrested in St. Charles Parish for violation of La. R.S. 40:967 on November 19, 2003, sentenced and put on probation on May 17, 2004. On December 30, 2004, the defendant was remanded to custody for a probation violation, and his probation was revoked on April 12, 2005. Id.
*1244 Pursuant to the State's request, a pre-trial conference was held on April 18, 2007, and a trial date of July 10, 2007 was selected. On May 25, 2007, the defendant filed a motion to quash due to time limitations. On July 10, 2007, the trial was continued to October 2, 2007, on motion of the defendant. The State and the defendant argued the merits of the defendant's motion to quash before the trial court on October 18, 2007. In opposition, the State introduced the testimony of James Bridges and Louis Tinson, both from the Plaquemines Parish Sheriff's Office, and introduced several exhibits into evidence, including the trial court's entire record. At the close of the hearing, the trial court ruled in favor of the defendant and stated on the record:
Let me get my ruling on this. Under Louisiana Code Criminal Procedure, the system of time limitation for trial is a very simple one. The period at issue here is the period between commencement of prosecution by information or indictment, and the commencement of trial.
The general rule set in article 578 is two years for this type of felony case.
It is three years for capital, two years for felonies, one year for misdemeanors.
Under article 579, these periods are interrupted in two specific situations: In State versus Ignatius (spelled phonetically), the Supreme Court in a precarium[sic] opinion, held that the State bares a heavy burden of showing that it is excused from trying an accused on a charge within the period required by 578.
In Ignatius the defendant was charged with a misdemeanor in December of 1980, he was not tried until April of 1982.
At trial the defendant moved to quash, by it being more than one year, the period provided in article 578 passes since the prosecution had commenced.
The Supreme Court reverses the trial court's denial of the motion to quash. Held the evidence does not warrant a finding that the defendant absented himself from his usual place of abode within the state with the purpose of avoiding detection, apprehension or prosecution.
That is one way of showing an interruption.
Now, the State hasn't in my mind presented enough proof to show that it has, that the defendant did absent himself from his usual place of abode.
Mr. Hufft:
We're not maintaining that either, Judge.
The Court:
I am ruling, Mr. Hufft, thank you.
And in my understanding of this situation, and after reading extensively the case law in this whole area, is that as of December 30th, 2004, Mr. Baptiste's usual place of abode was the St. Charles parish prison, it's as simple as that.
Basically the article 579 interruption indicates that that is basically what is known as the general fugitive from justice rule. He didn't show up, he didn't come to court, he wasn't at his home or his address that he gave.
It baffles me to understand how Mr. Baptiste could be a fugitive from justice when he's sitting in a prison. How could he be? It just doesn't make sense.
The argument that the State agencies didn't advice each other that they had somebody in custody doesn't hold water either. It just seems to me in today's time of computers and other issues dealing with communication, that we should be on the same page. Apparently we were not during this period of time, according to Mr. Bridges and his testimony, *1245 that they were making a transgression to a better system, one that could give notice to everyone.
Mr. Hufft is correct, all the cases that I reviewed in the court, by the Court and its clerk basically dealt with people who were outside the State. And the Court came to quite a simple understanding of why that is so.
And the issue is, that you should know where they are if they are in the State. You should try to find out where they are if they are in the State. You can't just rely on that a bench warrant is issued. You have to try to find out where [sic] is at especially if he's in the State's custody. If he's in the State's custody, he should have been tried within two years.
So I will grant Mr. Baptiste his motion to quash and quash the bill of information.
Mr. Hufft:
I'd like to clarify a ruling of the Court. Has the Court determined that the bench warrant, arrest warrant that it issued on June 17th, 2004, was in fact a valid arrest warrant?
The Court:
I don't know if that was part of the issue of this case. Why was that at issue, Mr. Hufft?
Mr. Hufft:
It is at issue, because it deals with the State's contention under article 579.3 [i.e., La.C.Cr.P. art. 579(A)(3) ], and the cases sighted to the Court from the Third Circuit, and also adopted by the First Circuit
The Court:
The Court rules that it was a valid warrant. And the Court is also ruling that it was interrupted until December 30th of 2004. And he should have been tried before 2004 and 2006. He was not tried between 2004 and 2006, therefore it is quashed. He is to be released on this charge.
Therefore, the trial court held that: 1) the defendant did not seek to avoid trial by fleeing from justice; 2) an interruption to the applicable time limitation occurred following the defendant's failure to appear at the June 17, 2004 pre-trial conference; 3) the interruption ceased as of December 30, 2004, when defendant was incarcerated for probation violation in connection with charges arising out of a St. Charles Parish proceeding; and 4) the State failed to bring its case against defendant to trial within two years of December 30, 2004.

STATEMENT OF FACT
As noted, in 2003 the trial court quashed the bill of information pursuant to defendant's assertion of double jeopardy. In State v. Baptiste, 2003-2075, pp. 1-3 (La.App. 4 Cir. 4/28/04), 875 So.2d 833, 834, this Court reversed the trial court and summarized the facts of this case accordingly:
The facts of this case are evidenced in the record only by documents attached to the State's answers to the defense discovery motions. The report prepared by the sheriffs office reflects that on August 19, 2002, the victims, Hubert Cole and Leonard Broussard, were driving on Lake Hermitage Road toward a marina when a blue Oldsmobile passed them, then turned around and cut them off. The passenger of the Oldsmobile exited and approached the victims and ordered them to exit their truck, which they did. The perpetrator was armed with a revolver. At that time, the driver of the Oldsmobile also exited his vehicle, but the victims were unable to say whether he also had a weapon. The first suspect obtained the wallet of one of the victims, Mr. Broussard, which contained cash, credit cards, and his *1246 driver's license. The other victim, Mr. Cole, gave his wallet, his hunting knife, and the keys of his vehicle to the driver of the Oldsmobile. The driver told the victims not to move, and both robbers then left the scene in the Oldsmobile. The victims flagged down a passing St. Charles Sheriffs deputy and told him of what had occurred. The deputy told the victims to call the Plaquemines Parish Sheriffs office to report the robbery, which they did.
Later the same day, one of the victims, Leonard Broussard, called the Plaquemines Parish Sheriffs office and reported that his bank had called to tell him someone was trying to use his card at an ATM machine at a food mart in Luling. Also, the cashier at the food mart called the police because she had noticed that the person using the card, the defendant, was African-American, but had a white man's driver's license. Furthermore, the defendant had aroused the cashier's suspicions because of questions regarding how many times he could use the ATM machine before it stopped him. Deputies from the St. Charles Parish Sheriffs office responded to the scene and arrested the defendant after a struggle. A second person on the scene, which fit the description of the second robber, fled the food mart and has never been apprehended or identified.
At the time of his arrest, the defendant was found in possession of Mr. Broussard's driver's license and two credit cards. He also discarded narcotics. He was subsequently charged in St. Charles Parish with several offenses. On August 21, 2003, after Mr. Broussard positively identified him in a photographic line-up as one of the robbers, an arrest warrant was issued in Plaquemines Parish. That warrant was not executed until February 25, 2003, when St. Charles Parish authorities notified Plaquemines Parish that the defendant was ready to be transferred.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
In its brief, the State argues that the trial court erred in granting the defendant's motion to quash based on its failure to bring him to trial within the applicable time limitations. Specifically, the State asserts that the defendant's failure to appear for the June 17, 2004, pre-trial conference indicates an intent to avoid detection, apprehension, or prosecution. Further, the State asserts that the defendant was "on the lamb" when he returned to St. Charles Parish, his domiciliary parish, following his last trial court appearance in 2004, and that the defendant had an obligation to inform the State in Plaquemines Parish that he was incarcerated by the Department of Public Safety and Corrections in another part of the state. Thus, the State argues that the defendant's failure to attend the June 17, 2004 pre-trial conference resulted in an interruption that did not cease until the State had actual knowledge of the defendant's whereabouts on March 23, 2007. Accordingly, the State asserts that the trial court erred in granting the motion to quash because the applicable time period of limitation did not start to run again until March 23, 2007.
La.C.Cr.P. art. 578 provides
A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
1) In capital cases after three years from the date of institution of the prosecution;
2) In other felony cases after two years from the date of institution of the prosecution; and

*1247 3) In misdemeanor cases after one year from the date of institution of the prosecution.
B. The offense charged shall determine the applicable limitation.
Further, La.C.Cr.P. art. 579 states:
A. The period of limitation established by Article 578 shall be interrupted if:
1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
The Louisiana Supreme Court has held that under La.C.Cr.P. art. 578, the State bears the burden of justifying an apparently untimely commencement of trial on grounds that the time limits in La.C.Cr.P. art. 578 were either interrupted or suspended. State v. Joseph, 93-2734 (La.6/3/94), 637 So.2d 1032. In the present case, the order setting the pre-trial conference was served by a St. Charles Parish deputy upon the defendant by way of domiciliary service on May 15, 2004. The defendant failed to appear for the June 17, 2004, pre-trial conference. On June 19, 2004, the trial court issued an arrest warrant for the defendant based upon his failure to appear at the June 17, 2004, pre-trial conference. Accordingly, the trial court found that the defendant's failure to attend the June 17, 2004 pre-trial conference caused an interruption to the time limits for the initiation of trial set out in La.C.Cr.P. art. 578. Neither the State nor the defendant disputes this conclusion.
What is under dispute in the present case is the date upon which the interruption ceased and the applicable time limit started anew. As previously noted, the trial court held that the interruption ceased as of December 30, 2004, when the defendant was incarcerated for a probation violation in connection with a conviction arising out of a St. Charles Parish proceeding. The State asserts that the trial court's holding on this point is erroneous. Instead, the State asserts that the interruption did not cease until it received actual notice of the defendant's whereabouts on March 23, 2007.
This Court addressed La.C.Cr.P. art. 579(A)(3), in State v. Foster, 95-0585 (La. App. 4 Cir. 2/15/96), 669 So.2d 1288, in which the defendant was initially charged by bill of information dated May 3, 1990, with attempted simple burglary and a capias was issued. Arraignment was set for May 14, and a notice to that effect was sent to the Criminal Sheriffs office for service on the defendant. Although the return showed domiciliary service had been made at 2325 Gravier on May 10, 1990, the defendant failed to appear for arraignment. The trial court ordered an alias capias issued and set a bond at $20,000. On October 4, 1993, the defendant was arrested in the 2300 block of Gravier Street on other charges, and the outstanding burglary warrant was noted. After his arraignment the defendant posted a surety bond and was released, giving his address as 2325 Gravier Street.
The defendant moved to quash the prosecution because more than two years had elapsed since the bill of information was *1248 filed. The trial court granted the defendant's motion to quash; however, this court reversed on the State's application for writs. State v. Foster, unpub., 93-K-2113 (La.App. 4 Cir. 4/6/94). After the State amended the charge to simple burglary, the defendant was found guilty as charged after a jury trial, and he was sentenced as a multiple offender to forty months at hard labor. His appeal followed. On appeal, defendant again challenged the trial court's denial of his motion to quash. After noting that the defendant failed to present any additional evidence relevant to the issue, this Court held that the prior panel of this Court properly found that the defendant's actions interrupted the time limitation for prosecution because the defendant failed to appear even though he was notified at his stated address, proof of which was in evidence. Further, this Court found that the State was unable to try the defendant within the period specified by statute through no fault of its own so that the period for prescription was interrupted.
The defendant sought writs from the Supreme Court, which granted the writ in part, denied in part, and wrote:
The single attempt at domiciliary service upon relator by leaving the subpoena with an unidentified Ms. Lewis, who indicated that she did not see relator often at that address and refused to sign the return, did not establish that relator had actual notice of the proceedings and did not discharge the state's heavy burden "to exercise due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure his presence for trial once it has found him." State v. Estill, 614 So.2d 709, 710 (La.1993).

State v. Foster, 96-0670, (La.6/28/96), 675 So.2d 1101, 1102.
Accordingly, the present matter presents a res nova issue for this Court and essentially, this Court is called upon to decide what duty the law imposes upon the State when a defendant fails to appear in Court pursuant to actual notice. This Court agrees with the trial court's opinion that the State has an obligation to do more than cause an arrest warrant to be issued for the defendant.
The Supreme Court has, with respect to interruptions occasioned by those factors outlined in La.C.Cr.P. art. 579(A)(1) and (2), repeatedly held that the State bears a heavy burden "to exercise due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure his presence for trial once it has found him." Estill, 614 So.2d at 710. Applying this rationale to the facts in the record, it is clear that the State did absolutely nothing once it caused an arrest warrant to be issued for defendant.
In the present case, there is no indication that the authorities in Plaquemines Parish knew where the defendant was until 2007. Nevertheless, every document in the record which lists a non-correctional facility address for defendant places him at S. Kinler Street in Boutte, Louisiana. Thus, there is no evidence in the record to indicate that the authorities in Plaquemines Parish had anything but a St. Charles Parish address for defendant. Clearly, the Plaquemines Parish authorities could have located the defendant with a single phone call to the proper authorities in St. Charles Parish. Based upon the facts as presented in the record, it does not stretch credulity to suggest that the State in the present case could have easily located defendant based upon the knowledge it had at the time he failed to appear for the pre-trial conference.

*1249 CONCLUSION
Accordingly, we affirm the trial court's judgment granting the defendant's motion to quash.
AFFIRMED.