PAUL A. BONIN, Judge.
 

 hThe prosecution appeals the court-ordered dismissal of the bill of information for aggravated battery and the discharge of Ericka Sorden, the defendant.
 
 See
 
 La. C.Cr.P. arts. 538 and 912. The prosecution contends that the trial court erred in granting Ms. Sorden’s motion to quash the bill of information pursuant to Article 581 of the Louisiana Code of Criminal Procedure because her constitutional right to a speedy trial was not violated. We need not conclude that she was deprived of her constitutional speedy trial right in order to find that the statutory period of limitation on the commencement of trial had expired on Ms. Sorden’s charge prior to the trial court’s granting of her motion to quash. We hold that the trial court did not err in sustaining the motion, dismissing the charges, and discharging Ms. Sorden, and we accordingly affirm. We explain our conclusion in greater detail in the following Parts.
 

 _bi
 

 In this Part we address the timeline in this prosecution.
 

 
 *183
 
 Initially, Ericka Sorden was charged by bill of information with one count of aggravated battery on Rose Johnson under case number 460-306 on June 13, 2005. She was released on her own recognizance (ROR). After pleading not guilty at a reset arraignment, Ms. Sorden appeared for motion hearings on August 16, 2005. On August 29, 2005, Hurricane Katrina devastated New Orleans and Ms. Sorden evacuated her Treme home. Temporarily sheltering in Texas, Ms. Sorden did not return to live in New Orleans until 2008.
 

 Some months after the district court resumed its normal functioning, a status hearing was set for October 18, 2006. The prosecution requested service of a subpoena by mail on Ms. Sorden at her home address previously identified on her ROR bond. Of course, the notice was undeliverable and the letter (with subpoena) returned. The prosecution requested and obtained an
 
 alias capias
 
 for her arrest. The status hearing was reset to December 19, 2006, at which hearing Ms. Sorden drove in to New Orleans from Texas to appear. On that date, the prosecution in open court and in the presence of Ms. Sorden
 
 nolle prosequied
 
 her charge. Her case was dismissed and the
 
 alias capias
 
 was recalled.
 

 On February 7, 2007, under case number 468-488 initially allotted to a different section of the district court, the prosecution pursuant to La.C.Cr.P. art. 386 reinstituted the same charge of aggravated battery against Ms. Sorden. The arraignment was scheduled for two days later. Service by mail of her subpoena was again attempted at the abandoned address. Without any knowledge of the reinstitution of the proceedings, much less of the (to say the least) expedited arraignment date, Ms. Sorden was absent for her arraignment. This time the court Rissued an
 
 alias capias
 
 without bond and set a new hearing date for February 26, 2007. No service of any notice was requested and Ms. Sorden was again absent. According to the minutes, the court granted the prosecution’s motion for bond forfeiture
 
 [1]
 
 and issued another
 
 alias capias
 
 with a bond of $25,000. Without objection from the prosecution, the court continued the matter
 
 without
 
 date.
 

 On June 12, 2009, without counsel, Ms. Sorden appeared for a status hearing. On July 8, 2009, Ms. Sorden was arraigned on the reinstituted charge and, just as she had done before, entered a plea of not guilty. On August 21, 2009, this time with an attorney, Ms. Sorden was present to file a motion to quash pursuant to the grounds set forth in La.C.Cr.P. art. 581. After a contradictory hearing, the trial court granted the motion.
 

 II
 

 In this Part we address first the standard of review which we apply in this matter and then the legislatively-determined time limitations on the commencement of a criminal trial as well as upon which party the burden of persuasion falls.
 
 See
 
 La. C.E. art. 302(1).
 

 A reviewing court will not disturb a trial court’s ruling on a motion to quash in the absence of an abuse of discretion.
 
 See State v. Batiste,
 
 05-1571, p. 9 (La.10/17/06), 939 So.2d 1245, 1251;
 
 State v. Love,
 
 00-3347, p. 10 (La.5/23/03), 847 So.2d 1198, 1206-1207.
 

 La.C.Cr.P. art. 578 mandates the time limits on the commencement of trials depending upon the classification of the of
 
 *184
 
 fense charged. Article 578 (emphasis supplied) provides:
 

 |4A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
 

 (1) In capital cases after three years from the date of institution of the prosecution;
 

 (2) In other felony cases after two years from the date of institution of the prosecution; and
 

 (3) In misdemeanor cases after one year from the date of institution of the prosecution.
 

 B. The offense charged shall determine the applicable limitation.
 

 Aggravated battery, a violation of La. R.S. 14:34, is punishable by imprisonment with or without hard labor for not more than ten years; it is also a non-capital felony.
 
 See State v. Butler,
 
 302 So.2d 585, 587 (La.1974). Thus, as a general rule, trial shall be commenced within two years of the institution of prosecution.
 

 Prior to our analysis, we make two initial observations. First, we note that this is
 
 not
 
 a case wherein the defendant challenges the prosecution’s dismissal and reinstitution of charges as an abuse of its
 
 nolle prosequi
 
 powers.
 
 See, e.g., State v. Henderson,
 
 00-511, pp. 6-8 (La.App. 4 Cir. 12/13/00), 775 So.2d 1138, 1141-1142 (and our discussion
 
 infra
 
 in Part III). Second, we acknowledge that the prosecution reinstituted the charge against Ms. Sorden well within the time limit for institution of prosecution for non-capital felonies.
 
 See
 
 La.C.Cr.P. art. 572 (providing that prosecution must be instituted within four years from the time of the offense for a felony not necessarily punishable by imprisonment at hard labor). One method of instituting prosecution of a felony not punishable by death or life imprisonment is by the filing of a bill of information.
 
 See
 
 La.C.Cr.P. art. 382 A;
 
 State v. Jones,
 
 443 So.2d 639 (La.App. 4th Cir.1983). Because the prosecution was instituted against Ms. Sorden, albeit for the second time, on February 7, 2007, |sthe trial must have commenced not later than February 7, 2009,
 
 [2]
 
 unless some exception applies.
 

 Our jurisprudence has emphasized the importance of enforcing the statutory right of an accused to a speedy trial, as the purpose of the statute is “to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time.”
 
 State v. Ramirez,
 
 07-652, p. 4 (La.App. 4 Cir. 1/9/08), 976 So.2d 204, 207 (citing
 
 State v. Walgamotte,
 
 415 So.2d 205, 210 (La.1982)). The prosecution, then, bears the burden of showing that an exception to the two-year limitation applies, and that commencement of trial is timely.
 
 See State v. Rome,
 
 93-1221 (La.1/14/94), 630 So.2d 1284, 1286-1287;
 
 State v. Brown,
 
 451 So.2d 1074, 1079 (La.1984);
 
 State v. Taylor,
 
 439 So.2d 410, 412 (La.1983);
 
 State v. Walgamotte, supra; State v. Nations,
 
 420 So.2d 967, 967 (La.1982);
 
 State v. Driever,
 
 347 So.2d 1132 (La.1977).
 

 Certain events may suspend or interrupt the running of this time limitation pursuant to La.C.Cr.P. arts. 579 or 580. Once the cause of an interruption no longer exists, the running of the limitation commences to “run anew,” effectively starting the limitation period over. La.C.Cr.P. art. 579. (The aftermath of Katrina was one cause which occasioned an interruption in the time limitation in some cases until June 5, 2006.
 
 See State v. Davis,
 
 09-53, p. 5 (La.App. 4 Cir. 9/30/ 09), 21 So.3d 1038,
 
 *185
 
 1040;
 
 but see
 
 La.C.Cr.P. art. 955.) The statutory grounds for interruption applicable to this appeal we discuss in more detail in Part IV-B,
 
 infra.
 
 La.C.Cr.P. art. 580 provides the suspension of the time period between the filing of a motion |fito quash and the ruling thereon, a situation that is inapplicable to this appeal. With these statutory guidelines in mind, we now examine the prosecution’s argument.
 

 Ill
 

 The prosecution’s primary argument on appeal is that the statutory right to a speedy trial is circumscribed by the federal constitutional right. The prosecution extends that premise to argue that, because Ms. Sorden has not been deprived of her federal constitutional right to a speedy trial, she is not entitled to the statutory speedy trial protections afforded by Article 578 or the remedy of dismissal under Article 581. We disagree.
 

 The prosecution cites us to the correct proposition from our jurisprudence that mere compliance with statutory limitations for instituting prosecutions or commencing trials is not sufficient to establish that there has been no constitutional speedy trial violation.
 
 [3]
 

 See State v. Love,
 
 00-3347, p. 14 (La.5/23/03), 847 So.2d 1198, 1209;
 
 State v. Scott,
 
 04-1142, p. 12 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 851;
 
 State v. Henderson, supra,
 
 775 So.2d at 1142. A state’s ability to institute prosecutions or commence trials is subject to the protections of the Sixth Amendment, but a defendant’s ability to invoke statutory limitations on institution of prosecution or, as here, commencement of trial is not conditioned or dependent upon establishing a separate Sixth Amendment violation.
 
 See State v.
 
 Powers,
 
 infra.
 
 The United States Supreme Court in
 
 Barker v. Wingo
 
 approvingly cited the right of legislatures to define more narrowly the speedy trial right by enacting laws 17that set forth specific time limitations.
 
 Barker,
 
 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (the Court stated that, in recognizing the virtue of clarifying when the speedy trial right is infringed and simplifying courts’ application of it, “some legislatures have enacted laws and some courts have adopted procedural rules which more narrowly define the right.”). The provisions of La.C.Cr.P. art. 578 may in this instance provide a more rather than less restrictive time limitation for commencement of trial than would be required under a
 
 Barker v. Wingo
 
 analysis.
 

 Thus, statutory and constitutional rights are distinct bases for asserting the right to speedy trial.
 
 State v. Powers,
 
 344 So.2d 1049, 1051 (La.1977). The Louisiana Supreme Court, in
 
 State v. Powers, supra,
 
 344 So.2d at 1051, n. 5, discussed the distinction between constitutional and statutory speedy trial guarantees:
 

 Interestingly, the statutory provision is narrower than the constitutional right to a speedy trial (because, for example, the acceptable time period may be longer than that approved under the constitutional guarantee) and it is at the same time broader than the constitutional right (because, for example, there is no need to-assess prejudice to the accused
 
 *186
 
 nor to require that an accused make known his desire for an early trial).... The state’s reason for delay is of no moment in questions of the running of statutory time periods,
 
 See State v. Martens,
 
 338 So.2d 95 (La.1976), but may well be relevant in a determination as to whether defendant’s right to speedy trial has been violated.
 
 See Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (other citations omitted).
 

 Accordingly, the question of whether a speedy trial violation is statutory or constitutional involves wholly separate inquiries. Regardless of whether Ms. Sor-den can establish a showing of an infringement of her constitutional right to speedy trial, the success of her statutory claim is not dependent upon the success or failure of a constitutional claim.
 

 | ¡¡Because in the next Part we explain our decision to affirm the district court’s ruling exclusively on the basis of the grounds provided by Article 578 and having rejected the prosecution’s primary argument that Ms. Sorden’s right to invoke relief under Article 578 is dependent upon there existing a constitutional speedy trial violation, we need not examine closely the parties’ analyses of whether there has been a Sixth Amendment speedy trial violation.
 
 [4]
 

 IV
 

 The trial court had an adequate basis for quashing the indictment on statutory grounds, which we address in this Part.
 
 [5]
 

 As we set out in Part II, Article 578 mandates the commencement of Ms. Sor-den’s trial no later than February 7, 2009, unless the prosecution established an exception which was provided for in that chapter. In this case, the prosecution argues that the two-year limitation period was interrupted by a cause provided for in La.C.Cr.P. art. 579, which states:
 

 A. The period of limitation established by article 578 shall be interrupted if:
 

 (1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
 

 (2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for 19any other cause beyond the control of the state; or
 

 (3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears in the record.
 

 
 *187
 
 B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
 

 The prosecution claims that Ms. Sor-den’s “bad faith” interrupted the two-year limitation. The prosecution’s allegation of bad faith rests on the suggestion that Ms. Sorden had a duty, based on her previous ROR bond in case 460-806, to inform the court of her whereabouts after her charge was dismissed on December 19, 2006. Because this seems to be the gravamen of the prosecution’s argument, we will examine first the obligations arising under the bond undertaking before we specifically consider whether the prosecution has established a ground for interrupting the two-year period.
 

 A
 

 After her arrest, Ms. Sorden had been released from custody on her own recognizance. An ROR bond is bail without a surety. La.C.Cr.P. art. 325. Despite the prosecution’s reliance upon Ms. Sorden’s obligations under this bond, the bond itself has not been included in the record before us. Typically, however, such bonds feature an unsecured financial obligation on the part of the released party in the event of a default.
 
 See
 
 La.C.Cr.P. art. 327 A(4). The primary remedy for a breach of the bond undertaking is, of course, revocation of the bond and possible re-incarceration.
 
 See
 
 La.C.Cr.P. art. 346(1).
 

 La.C.Cr.P. art. 322 A provides in pertinent part:
 

 A. The defendant when signing a bail bond shall write under his signature the address at which he resides. The address shall be conclusively presumed to continue |infor all proceedings on the bond, until he files in the proceeding in which the bond was given a written declaration changing the address.
 

 Maintaining a current address is accordingly a defendant’s obligation under an existing bond. La.C.Cr.P. art. 322 E, providing that “[b]y signing the bail bond, the defendant and his surety waive any right to notice, except the notice provided for in Article 344 and R.S. 15:85,” qualifies that obligation. Not to be overlooked is the requirement of Article 344 B(2) which provides that the
 
 mailing
 
 of notice to appear in court must be “at least three days prior to the day set for the appearance.” When the court set the initial arraignment date two days after the reinstitution of the prosecution, even if the ROR bond was still in effect, there would have been insufficient notice provided to Ms. Sorden under any bond obligation.
 

 The prosecution suggests that Ms. Sor-den’s failure to update her address while living in Texas put her in a state of bad faith sufficient to interrupt the statutory limitations until her reappearance in court on June 12, 2009. Ms. Sorden asserts that when the prosecution
 
 nolle prosequied
 
 her charge on December 19, 2006, her case was dismissed and she was released from her existing bond obligation. The only support for this assertion is the minute entry from December 19, 2006, which reflects that a
 
 nolle prosequi
 
 was entered, the
 
 alias capias
 
 was recalled, and finally, the words: “Case closed, this defendant.”
 
 [6]
 
 However, as a later minute entry reflects, once Ms. Sorden reappeared in 2009, the court allowed her to “remain out of jail on the bond that was posted in 460-306,” her
 
 *188
 
 initial charge from 2005, due to the fact that this was a reinstitution of that charge.
 

 InThe prosecution’s allegation of bad faith is based solely on Ms. Sorden’s supposed continuing obligations under her bond in a case that had, as far as she knew, been dismissed pursuant to a
 
 nolle prosequi
 
 The prosecution has not included a transcript of the proceedings from December 19, 2006, and we are therefore unable to determine from the record if the court on that date cancelled Ms. Sorden’s bond in case number 460-306. Ms. Sorden had been released on bail without surety in that case.
 
 See
 
 La.C.Cr.P. art. 325. Under this bond, Ms. Sorden would indeed have a duty to update her current address.
 
 See
 
 La.C.Cr.P. art. 322 and our discussion
 
 supra.
 
 As stated above, it is unclear whether the bond in 460-306 remained in effect after the
 
 nolle prosequi
 
 The prosecution has not shown that it was. The record also reflects that the trial judge ordered the bond forfeited in case number 468-488. However, not only has the prosecution not included a copy of the bond in the record, they have made no showing that they satisfied
 
 their
 
 obligations pursuant to the bail statutes. No formal steps toward forfeiture appear in the record before us.
 
 See
 
 La.C.Cr.P. art. 344 B(2); La. R.S. 15:85;
 
 see also State v. Hathaway,
 
 403 So.2d 737, 739 (La.1981) (to obtain a bond forfeiture judgment against a surety, the State must strictly comply with the procedures in La. R.S. 15:85). Bail is primarily a contractual undertaking: it is the legal security given by a person to assure his appearance before the proper court whenever required.
 
 See
 
 La.C.Cr.P. art. 311. The prosecution has not included a copy of the bond in the record, and we decline to presume bad faith, particularly pursuant to obligations under a contract that is not before us. Furthermore, the prosecution has not pointed to any authority, and we have found none, that Ms. Sorden’s supposed bad faith under her bond obligation constitutes an independent ground for interruption of the 11gtime limitations. We cannot agree that the prosecution’s mere accusation of bad faith is sufficient to interrupt the time limitations under article 578.
 

 B
 

 Finally, we address the trial court’s granting of the motion to quash under La.C.Cr.P. art. 581. The prosecution failed to demonstrate that the time limitation had been interrupted under La. C.Cr.P. art. 579 A. In order to interrupt the limitation under article 579 A(l), the prosecution must show that Ms. Sorden fled her usual place of abode with the purpose of avoiding detection, apprehension, or prosecution.
 
 State v. Amarena,
 
 426 So.2d 613 (La.1983). It can be reasonably inferred from the record that Ms. Sorden left New Orleans, like many other residents, in order to escape Hurricane Katrina, not the legal authorities. Ms. Sorden’s appearances in court on November 2 and December 19, 2006, indicate as much. Ms. Sorden’s return to New Orleans in 2008, when, apparently unbeknownst to her, the prosecution had reinst-ituted her initial charge, further suggests that she was unaware of the renewed charge. In any event, the prosecution offers no evidence, except for her failure to reply to a subpoena mailed to a house “totaled” by Katrina, to show Ms. Sorden was purposefully avoiding prosecution. Because the prosecution has failed to carry its burden of proving that Ms. Sorden intended to flee legal authority, the provisions of Article 579 A(l) are not satisfied, and her decision to evacuate after Katrina does not interrupt the statutory time limitation under that section.
 

 The prosecution also fails to satisfy the requirements of La.C.Cr.P. art. 579 A(2), which interrupts the period of limitation
 
 *189
 
 when “the defendant cannot be tried ... because [her] presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.” In
 
 State v. Carcamo,
 
 03-589 (La.App. 5 Cir.2003), 860 So.2d 220, 223-224, the court held that in order to satisfy its “heavy burden” of establishing interruption on the basis of article 579 A(2), the prosecution was required to show it had “exercised due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure his presence for trial once it has found him.” This burden remains even where the prosecution has made numerous attempts at service and the defendant has moved out of the state’s jurisdiction.
 
 State v. Chadbourne,
 
 98-1998 (La.1/8/99), 728 So.2d 832;
 
 State v. Estill,
 
 614 So.2d 709, 710 (La.1993);
 
 Carcamo, supra,
 
 860 So.2d 220.
 

 In
 
 State v. Estill, supra,
 
 the trial took place more than two years after the initiation of prosecution. The defendant had moved to another state in connection with his employment. The state argued that the defendant had “moved and disappeared” at some time between arrest and the indictment, almost one year later. The prosecution called this a cause “beyond the control of the state,” interrupting the running of prescription. The Louisiana Supreme Court disagreed with both the trial court and the appellate court, holding that the defendant could have been located had the state tried to contact his employer. Therefore, the State failed to carry its burden of proving that it had exercised due diligence in attempting to locate the defendant within the time limit mandated by La.C.Cr.P. art. 578. The Court stated:
 

 This Court has consistently held that the state “bears the heavy burden of showing that it is excused from trying the accused on a charge later than the period mandated by Article 578.”
 
 State v. Groth,
 
 483 So.2d 596, 599 (La.1986);
 
 State v. Amarena,
 
 426 So.2d 613 (La.1983);
 
 State v. Devito,
 
 391 So.2d 813 (La.1980);
 
 State v. Driever,
 
 347 So.2d 1132 (La.1977). That burden requires the state to exercise due diligence in discovering the whereabouts of the defendant as well as 114in taking appropriate steps to secure his presence for trial once it has found him.
 
 See State v. Taylor,
 
 439 So.2d 410 (La.1983);
 
 State v. Nations,
 
 420 So.2d 967 (La.1982);
 
 State v. Williams,
 
 414 So.2d 767 (La.1982).
 

 Estill, supra,
 
 614 So.2d at 710-711. Similarly, here, the prosecution has not demonstrated an exercise of due diligence in discovering the whereabouts of Ms. Sorden sufficient to satisfy its “heavy burden.” At the hearing on the motion to quash, the state presented no witnesses or evidence of efforts to locate Ms. Sorden. Aside from mailing a subpoena to her destroyed home, the prosecution has failed to present evidence that it made any effort to ascertain her whereabouts. Because the prosecution has not made this showing, there was no interruption under Article 579 A(2).
 

 Likewise, because Ms. Sorden was not properly served after her charge was dismissed, she never received “actual notice” under La.C.Cr.P. art 579 A(3), which interrupts the period of limitation if “[t]he defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears in the record.” Had Ms. Sorden been adequately notified, the prosecution’s reinstitution of the charge would have been timely, as the prosecution would not bear the burden of showing that it attempted to locate her, and the time limits would then have been interrupted until her reappearance. The Louisiana Supreme Court has recognized that La. C.Cr.P. art. 579 A(3) does not impose on the prosecution the “affirmative duty to search for a defendant who has failed to appear for trial after receiving actual no
 
 *190
 
 tice.”
 
 State v. Romar,
 
 07-2140, p. 6 (La.7/1/08), 985 So.2d 722, 726;
 
 see also State v. Buckley,
 
 02-1288, p. 8 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193, 1199 (“In our view, a defendant who has chosen to ignore actual notice should not receive any benefit from his action; by the same token, the State should not bear the | lsburden of finding and re-serving (or arresting) such defendants ... ”). The prosecution has only shown that an attempt at service was made on one occasion: by mailing a subpoena to Ms. Sorden’s destroyed prior residence, and no proof of actual notice otherwise appears in the record. A single attempt at service does not establish that Ms. Sorden had actual notice of the proceedings.
 
 See, e.g., State v. Foster,
 
 96-670 (La.1996), 675 So.2d 1101, 1102. Accordingly, Article 579 A(3) does not interrupt the time limitation in this matter.
 

 In
 
 State v. Baptiste,
 
 08-2468 (La.6/23/10), 38 So.3d 247, the Louisiana Supreme Court recently reversed our ruling that affirmed the trial court’s granting of a motion to quash pursuant to La. C.Cr.P. art. 579 A(3). We had determined that the prosecution could have easily found the defendant while he was in jail in another parish, and thus the interruption did not continue during the period of his incarceration.
 
 State v. Baptiste,
 
 08-54, p. 11 (La.App. 4 Cir. 10/01/08), 995 So.2d 1242, 1248. The Supreme Court reversed, because we had improperly imposed an affirmative duty to search for a defendant who failed to appear for trial after receiving actual notice.
 
 Baptiste, supra,
 
 08-2468 at p. 1 (citing
 
 State v. Romar,
 
 07-2140, p. 6 (La.7/1/08), 985 So.2d 722, 726-727.). The defendant in
 
 Baptiste
 
 failed to appear at a status hearing because he was incarcerated, and domiciliary service
 
 had been effected
 
 upon his last known residence, sufficiently providing “actual notice” and triggering an interruption under 579 A(3). Our opinion correctly noted that there had been actual notice but incorrectly decided that the prosecution still had a duty to search for the defendant.
 
 Baptiste, supra,
 
 995 So.2d at 1248. The crucial difference in this case is that Ms. Sorden never received “actual notice” sufficient to relieve the prosecution of its burden. Even if the prosecution were to allege that she received actual notice, there is no proof of it in the record before us. | ^Accordingly, we cannot find that the time limits were interrupted pursuant to La.C.Cr.P. art. 579 A(3).
 

 We emphasize that the prosecution has an affirmative duty to provide proof that satisfies the requirements of the provisions of article 579 A(l) and (2). The prosecution has not done so. Further, the record does not show that Ms. Sorden received the “actual notice” that would relieve the prosecution of this affirmative duty and interrupt the time limitation pursuant to La.C.Cr.P. art. 579 A(3). The prosecution has been unable to identify anything between the time the charge was reinstituted on February 7, 2007, and the expiration of time for prosecution two years later, on February 7, 2009, that would trigger a suspension or interruption of the time limitation pursuant to La.C.Cr.P. arts. 579 or 580. Accordingly, the trial court did not err in granting Ms. Sorden’s motion to quash.
 

 V
 

 In this Part we address the relief to which Ms. Sorden is entitled upon a finding that the two-year time limitation for commencement of her trial had expired without interruption.
 

 The failure to timely commence trial is properly raised by a motion to quash. La. C.Cr.P. 532(7). When the prosecution cannot establish that there was some inter
 
 *191
 
 ruption of the time limitation pursuant to La.C.Cr.P. art. 578, the trial court must sustain the motion to quash. La.C.Cr.P. 538(3). According to article 578 A(2), “no trial shall be commenced nor any bail obligation be enforceable ... [i]n [non-capital] felony cases after two years from the date of institution of the prosecution.”
 

 Accordingly, the trial court granted the Motion to Quash under La.C.Cr.P. art. 581, which states:
 

 |17Upon the expiration of the limitations established by this Chapter [arts. 578-583], the Court shall, upon motion of the defendant, dismiss the indictment. This right of dismissal is waived unless the motion to quash is made prior to trial.
 

 If the indictment is dismissed under this article, there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts.
 

 CONCLUSION
 

 The prosecution was mandated by statute to commence the trial of Ms. Sorden for aggravated battery within two years of its filing the bill of information unless it proved that the time period had been suspended or interrupted. The trial judge found no interruption had occurred and we find no abuse of his discretion in that ruling. Moreover, we reject the prosecution’s argument that Ms. Sorden is not entitled to enforce her statutory right to the timely commencement of her trial because, it argues, she has not established a deprivation of her constitutional right to a speedy trial.
 

 DECREE
 

 We affirm the judgment of the district court sustaining the motion to quash the bill of information, dismissing the charges, and discharging the defendant, Ericka Sorden.
 

 AFFIRMED.
 

 [1]
 

 . The record of these proceedings does not contain any written pleadings which indicate that the prosecution actually took any formal steps to forfeit or collect the ROR bond.
 
 See
 
 La. R.S. 15:85 and La.C.Cr.P. art. 344.
 
 Also see
 
 discussion
 
 infra
 
 in Part IV-A.
 

 [2]
 

 . Although February 7, 2009 was a Saturday, which is a holiday or half-holiday,
 
 see
 
 La. R.S. 1:55, trials may commence on a holiday or half-holiday. La.C.Cr.P. art. 763.
 

 [3]
 

 . In its brief, the prosecution states:
 

 Jurisprudence from both the Louisiana Supreme Court and this Honorable Court has also recognized this authority, though that jurisprudence has also noted that the Defendant has a constitutional right to a speedy trial which may override the authority of the District Attorney in any given case. The defendant, therefore, has the burden to prove that a reinstitution of previously dismissed charges violates his right to a speedy trial in order for a quashal to be appropriate.
 

 (citations omitted)
 

 [4]
 

 . Not only do we pretermit consideration of the Sixth Amendment guarantee ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...”), applicable to the states by the Due Process Clause of the Fourteenth Amendment,
 
 Klopfer v. State of North Carotina,
 
 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), but we also pretermit consideration of our state's guarantee provided in La. Const, art. I, § 16 that "[e]very person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy ... trial ..." In their arguments to this court, neither the prosecution nor the defense briefed the legal consequence of Ms. Sorden’s lack of knowledge of the reinstitution of the prosecution for more than two years.
 
 See Doggett v. U.S.,
 
 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
 

 [5]
 

 . We note that it does not appear that the trial court countenanced constitutional speedy trial guarantees in granting the motion to quash. At the hearing on the motion to quash, after Ms. Sorden explained that her pre-Katrina New Orleans home on North Vil-lere street had been "totaled,” the court granted the motion, stating, "[biased on that, I think it is a good motion.” This short colloquy implies that the court was conducting a statutory, rather than constitutional, inquiry: particularly whether there had been "actual notice” that would relieve the prosecution of its burden under La.C.Cr.P. art. 579.
 

 [6]
 

 . According to La.C.Cr.P. art. 348, "[t]he court shall order the bail bond cancelled when there is no further liability thereon."